IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHAUNCEY T. CHARLES                                                PLAINTIFF

v.                          Civil No. 6:09-cv-06044

BRENT WENTWORTH, Group Six
Narcotics Enforcement Unit; CHIEF
DEPUTY TIM PATTERSON, Clark
County Sheriff's Office; and JAIL
ADMINISTRATOR ROY LOY, Clark
County Sheriff's Department                                        DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Chauncey T. Charles (hereinafter Charles), filed this civil rights action pursuant to

42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28

U.S.C. § 636(b)(1) and (3)(2009), the Honorable Robert T. Dawson, United States District Judge,

referred this case to the undersigned for the purpose of making a report and recommendation.

The events at issue in this case occurred during his arrest on March 25, 2009, and his

subsequent incarceration at the Crawford County Detention Center (CCDC). Specifically, Charles

maintains excessive force was used against him during the arrest and he was denied adequate medical

care.

Defendants filed a motion for summary judgment (Doc. 14). In an effort to assist Charles in

responding to the motion, I propounded a questionnaire (Doc. 20). Charles filed a response (Doc.

21). The motion is now ready for decision.

**1. Background**

On March 25, 2009, Charles was arrested by three officers from Clark County's Group Six

Drug Task Force. *Plaintiff's Response* (Doc. 21)(hereinafter *Resp.*) at ¶ 1. During a traffic stop,

Charles alleges Brent Wentworth ran up to Charles' car with his gun out, opened the driver's door, grabbed him by the shirt, and dragged him out of his car.  *Id.* at ¶ 2 & ¶ 12.  When he was out of the car, Charles states he jerked away from Wentworth.  *Id.* at ¶ 2.  As Charles did this, his shirt came off. *Id.*  Charles indicates he started to run and Wentworth tripped him.  *Id.*  Once Charles was on the ground and handcuffed, he states Wentworth put his knee on Charles' head and hit Charles in the mouth two or three times and pushed his head down into the pavement.  *Id.*  According to Charles, Wentworth stated he had Charles now; he was going away for a long time; and he needed to shut up. *Id.*

Charles identifies the other two officers involved for the first time, in the summary judgment response, as Eddie Keathley and Sam House.  *Resp.* at pg. 17.  He asks that he be allowed to add them as Defendants.  *Id.*  Charles maintains Keathley kicked and stomped him in the back when he was face down on the ground with his hands cuffed behind him.  *Id.* at ¶¶ 3-4.  In fact, Charles states Keathley left a print from his boot on Charles' back as a result of "stomping" him so hard.  *Id.*

Charles states House put the cuffs on so tightly that they left marks for life on Charles' right wrist.  *Resp.* at ¶ ¶ 3-4.  House then started hitting Charles in the ribs, mostly, on his left side.  *Id.*  Charles maintains he was not resisting and he did not tuck his hands underneath his body.  *Resp.* at ¶ 4(C).  Charles indicates he sustained injuries to his right elbow, wrist, hip, lower back, had bruises under his left arm and on the left side of his ribs and both lips were "busted."  *Id.* at ¶ 4(D).

In referring to photographs submitted as Defendants' Exhibit B, Charles indicates they reflect a "busted" bottom lip, a "busted" top lip, abrasions to his right elbow, an abrasion on his right wrist from the handcuffs, swollen ribs on both sides of his back, a swollen right lower back with a boot print down the right side, abrasions on the right middle back, and an abrasion on his right hip.  *Resp.*

at ¶ 8.  Prior to his arrest, Charles had no abrasions or bruises.  *Id.* at ¶9.

After he arrived at the CCDC, Charles indicates he asked Rick Loy, the jail administrator, to be taken to the local hospital for treatment.  *Resp.* at ¶ 5(A) & ¶ 14.  Charles states Loy's "superior," Chief Tim Patterson, would not allow it.  *Id.* at ¶ 5(A).  Charles did not speak directly with Patterson. *Id.*  Charles maintains Loy could have authorized the provision of medical treatment to him.  *Id.* at ¶ 14.  Instead, Charles indicates Loy merely provided him with Tylenol and ointment.  *Id.* at ¶ 6.

With respect to Patterson, Charles notes he was the chief at the time of the arrest.  *Resp.* at ¶ 13.  As such, Charles argues Patterson was a person who could have authorized Charles transport to the hospital for treatment of the injuries he received during the arrest.  *Id.*

Charles was asked whether he had any medical care for the injuries and he indicated he was given stool softeners and diagnosed with hemorrhoids without a rectal examination.  *Resp.* at ¶ 4(E). He was given ointment and pain pills for his elbow, wrist, and hip.  *Id.*  He indicates he never got his lower back, bruises under his left arm, or his ribs checked out to make sure nothing was cracked or broken.  *Id.*  He states it took a month for his elbow, wrist and hip to heal.  *Id.* at ¶ 4(F).  He asserts he still has problems with his lower back and ribs and experiences some bleeding from his rectum. *Id.*

According to Defendants, Charles submitted no written medical requests until March 30th. Charles, however, contends he submitted a request on March 26th and when he didn't get any help he filled out another one on the 29th or 30th of March.  *Resp.* at ¶ 5(B).

On March 30th, Charles submitted a medical request complaining of sore ribs and back and he also stated he needed his inhaler for asthma.  *Resp.* at ¶ 7(A).  Charles was seen by Dr. Gary Gehrki and prescribed an inhaler.  *Id.* at ¶ 7(B).  Defendants indicate Charles was also prescribed an

antibiotic but Charles does not recall whether he was or not.  *Id.*

On April 4th, Charles submitted a request asking to see a doctor for blood in his stool and sore ribs.  *Resp.* at ¶ 7(C).  In response, Charles was told he would be seen on April 7th.  *Id.* at ¶ 7(D).  However, he was seen a day earlier, on April 6th, and prescribed a stool softener.  *Id.* at ¶ 7(E).

On April 14th, Charles was seen again because of complaints of bleeding from his rectum.  *Resp.* at ¶ 7(F).  It was determined that he had external hemorrhoids and hydrocortisone cream was prescribed.  *Id.*  Charles was seen again on April 20th.  *Id.* at ¶ 7(G).  Charles was refusing to take the stool softener because he stated it upset his stomach.  *Id.*  Charles was not prescribed any different medication.  *Id.* at ¶ 7(H).

On May 1st, Charles was seen for complaints of rectal bleeding, itching caused by the soap, and a toothache.  *Resp.* at ¶ 7(I).  On May 15th, Charles was taken to see a doctor because of complaints of rectal bleeding.  *Id.* at ¶ 7(J).  He was diagnosed with hemorrhoidal bleeding and prescribed a suppository for seven days.  *Id.* at ¶ 7(K).  Charles feels that the officers caused the bleeding because he did not have any problem prior to the alleged assault by the three officers.  *Id.* at ¶ 7(L).

With the exception of April 12th, April 16th, April 28th, May 1st, May 16th, May 17th, May 19th, May 22nd to May 26th, and June 1, when Charles refused medication, he received all medication listed on Defendants' Exhibit C.  *Id.* at ¶ 7(M).  Charles received all medical care prescribed to him by the medical personnel he saw while at the CCDC.  *Id.* at ¶ 10.  In his medical requests the only injuries from the arrest he mentioned were his sore ribs and back.  *Id.* at ¶ 11.

**2.  Applicable Standard**

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and

. . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3.  Arguments of the Parties

First, Defendants argue there are no allegations that Wentworth was directly involved in arrest.  They maintain he may not be held liable merely because he was the head of the Group Six Drug Task Force.  Moreover, they maintain the pictures taken of Charles the day of his arrest show only minor abrasions to various areas of Charles' body.  They maintain the injuries are not of the severity one would expect from someone who had just been beaten by police officers.  With respect to Patterson and Loy, Defendants argue they did not encounter Charles until after the beating took place.

Second, Defendants maintain there is no evidence they were deliberately indifferent to Charles' serious medical needs.  They point out Charles was seen by medical personnel on multiple occasions beginning just a few days after his arrest and received all medication prescribed.  Further, there argue Charles can show no injury as a result of any delay in his receipt of medical care.

Finally, Defendants argue that the complaint is completely devoid of any alleged custom or policy of Clark County which resulted in a violation of his constitutional rights.  As a result, Defendants assert they are entitled to judgment in their favor on the official capacity claims.

In opposition, Charles argues Wentworth was directly involved in his arrest and in the use of excessive force against him.  Charles maintains excessive force was used against him after he was

already handcuffed and on the ground.  Charles also asks to add Keathley and House as Defendants.

With respect to the medical care claim, Charles maintains he should have received medical care immediately following his arrest.  Finally, Charles makes no contention that a policy, custom, or practice of Clark County was the moving force behind the constitutional violations.

### 4. Discussion

As noted above, Charles brings both an excessive force claim and a denial of medical care claim.  I will address each claim in turn.

### (A). *Excessive Force*

Charles contends Wentworth violated his  constitutional right to be free from excessive force during the course of his arrest.  "All claims that law enforcement officers have used excessive force in the course of an arrest or investigatory stop of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment." *Winters v. Adams*, 254 F.3d 758, 764 (8th Cir. 2001)(citation omitted).  *See also Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006).

"Police officers are liable for the use of excessive force when they use force that is not objectively reasonable in light of the facts and circumstances confronting them."  *Goff v. Bise*, 173 F.3d 1068, 1073 (8th Cir. 1999)(citations omitted).  In *Lawson v. Hulm*, 223 F.3d 831 (8th Cir. 2000), the court stated:

> Although there can be no question that the Fourth Amendment prohibits unreasonable seizures of the person, it is also well established that "not every push or shove violates the Fourth Amendment. The applicable test is "whether the force used to effect a particular seizure is reasonable."   In the context of a claim of excessive force, the "reasonableness" inquiry must be an objective one in that the court must only evaluate "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

> The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."

*Lawson*, 223 F.3d at 834 (citations omitted).

The use of some force by police is reasonable when an arrestee flees, resists arrest, or disobeys orders. *See e.g., Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). The lack of injury or a minor degree of injury is a factor that may be considered in determining whether the force used was excessive. *Id.*

In this case, Charles argues the use of physical force started when he was dragged from his car at gun point and continued while he was on the ground with his hands cuffed behind his back. Wentworth presents no use of force reports, arrest reports, incident reports, affidavits or other materials in support of his motion for summary judgment. In contrast, Charles' summary judgment response is sworn to under penalty of perjury.

At the summary judgment stage, I must view the evidence in the light most favorable to the nonmoving party. *See e.g., Henderson,* 439 F. 3d at 503. Based on the record before me, I believe a genuine issue of material fact exists concerning whether the amount of force used was excessive. Even if some amount of force was initially called for, according to Charles the use of force continued after he was on the ground in a prone position, not resisting, and handcuffed. *Cf. Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006)(upholding the denial of summary judgment based on an arrestee's evidence regarding the use of pepper spray while he was under control).

**(B).  *Denial of Adequate Medical Care***

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Charles must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Charles' maintains he should have received medical care on March 25th, the day of his arrest, for injuries he sustained when arrested.   He concedes he was given Tylenol and ointment that day.  He was seen by medical personnel on March 30th, five days later.  He was seen again on April 6th, April 14th, April 20th, May 1st and May 15th.  He received all medication prescribed to him.

On the record before me, there is no evidence of deliberate indifference on the part of the

Defendants.   Charles has offered no verifiable medical evidence to establish that he was harmed by the alleged delay between March 25th and March 30th in his first receiving medical treatment.  *See e.g., Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)(inmate who claims about delay in medical treatment must present verifying medical evidence of detrimental effect of delay).

### 5.  Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 14) be granted in part and denied in part.  Specifically, I recommend Defendants be granted summary judgment on Charles' denial of medical care claims and his official capacity claims against all Defendants.  This would dismiss all claims against Tim Patterson and Rick Loy.  I recommend that the motion be denied with respect to the individual capacity excessive force claim asserted against Defendant Wentworth.  By separate order Charles will be granted permission to amend his complaint to include Keathley and House.

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **22nd day of February 2011.**

/s/ Barry A. Bryant
  HON. BARRY A. BRYANT
  UNITED STATES MAGISTRATE JUDGE